UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

WESTFIELD INSURANCE GROUP,          )
                                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )          No. 1:19-CV-36-SKL
                                    )
                                    )
CHATTANOOGA FIRE PROTECTION,        )
INC., and CENTURY FIRE PROTECTION,  )
LLC,                                )
                                    )
                                    )
        Defendants.                 )

## <u>MEMORANDUM AND ORDER</u>

This case involves water damage to a La Quinta Inn that occurred after a sprinkler in the hotel's attic turned on unexpectedly. Plaintiff Westfield Insurance Group ("Plaintiff") insured the property and became subrogated to the rights of the hotel after paying a claim related to the water damage. Plaintiff contends that Defendant Century Fire Protection, LLC ("Century") and Defendant Chattanooga Fire Protection, Inc. ("Chattanooga Fire," and together with Century, "Defendants") are liable for the damage because they negligently installed and/or subsequently inspected the sprinkler system.

Before the Court are: (1) Century's motion for partial summary judgment [Doc. 61 (motion); Doc. 62 (brief and exhibits)]; (2) Plaintiff's motion for partial summary judgment against Century only [Doc. 66 (motion and exhibits); Doc. 71 (brief)]; and (3) Chattanooga Fire's motion

for summary judgment [Doc. 64 (motion); Doc. 65 (brief and exhibits)].[1]  These matters are now

ripe.  The Court has determined a hearing is not necessary.

## I.      BACKGROUND

It is undisputed that the attic of the hotel was equipped with a water sprinkler head that was

rated to 155 degrees, meaning it was designed to automatically activate when the ambient

temperature in the attic reached 100 degrees [Doc. 72 at Page ID # 1054; Doc. 72-1 at Page ID #

1066].  All parties agree this rating is insufficient for an uninsulated, non-airconditioned attic, and

that a sprinkler head rated to 200 degrees should have been installed [*see, e.g.*, Doc. 62 at Page ID

# 236].  On June 29, 2018, the sprinkler did activate even though there was no fire, and the hotel

sustained damage from the discharged water.[2]

Plaintiff originally sued only Chattanooga Fire.  By July 2019, the parties determined that

Century had also done fire protection work at the hotel, and therefore the parties jointly asked that

Century be joined as a Defendant, which the Court allowed [Doc. 25 & Doc. 26].

Plaintiff does not specify which Defendant it believes installed the improper sprinkler.[3]

The sprinkler was engraved with "2016," which, according to Plaintiff's expert, means that it was

---

[1] Plaintiff filed a response in opposition to Century's motion for partial summary judgment [Doc. 72]; Century did not file a reply.  Plaintiff also filed a response in opposition to Chattanooga Fire's motion for summary judgment [Doc. 74]; Chattanooga Fire filed a reply [Doc. 75].  Century filed a response in opposition to Plaintiff's motion for partial summary judgment [Doc. 73].  Plaintiff did not file a reply in support of the motion.  The time for filing any responses or replies has now passed.  *See* E.D. Tenn. L.R. 7.1.

[2] Because of the way it operates, the attic sprinkler system is referred to as a "dry sprinkler system" [*see, e.g.,* Doc. 71 at Page ID # 1049].  The system uses water, however.

[3] At one point, Plaintiff's brief speculates, "Century's installation of the subject sprinkler, is in fact the most logical conclusion . . . ." [Doc. 72 at Page ID # 1057].  However, at other points in that brief, Plaintiff writes that "either a Chattanooga [Fire] employee or a Century employee" installed the improper sprinkler, and that the "circumstantial evidence that a Chattanooga [Fire] or a Century employee" installed the improper sprinkler "is overwhelming" [Doc. 72 at Page ID # 1058].

2

manufactured in 2016 [Doc. 72-1 at Page ID # 1065]. Accordingly, the sprinkler was installed some time between January 1, 2016, and June 29, 2018. The record reflects that Chattanooga Fire performed fire-suppression-related inspections and maintenance at the hotel from 2010 until December 2016. There appears to have been a five-month gap in services, and then Century began providing those services in May 2017 [Doc. 74 at Page ID # 1195]. Neither Chattanooga Fire nor Century admits to installing the improper sprinkler. Plaintiff submitted an interrogatory response from Century indicating that "the sprinkler head at issue was already installed" at the hotel by May 2017 when Century took over at the hotel [Doc. 74-1 at Page ID # 1292-93].

Both Chattanooga Fire and Century admit to being at the hotel and performing periodic inspections. Plaintiff's expert reports that there is documentation of Chattanooga Fire employees being at the hotel five times in 2016, and documentation of Century employees being at the hotel 12 times between May 19, 2017, and June 5, 2018 [Doc. 72-1 at Page ID # 1068].

Plaintiff's second amended complaint asserts claims against both Defendants for negligence related to the installation and inspection of the sprinkler. Plaintiff also asserts claims against both Defendants for breach of the warranty of workmanship related to their alleged installation and inspections.

## II.    SUMMARY JUDGMENT

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *Jones v.*

3

*Sandusky Cnty., Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports*, 253 F.3d at 907.

The moving party bears the initial burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* at 323. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907.

In this case, both Plaintiff and Defendants have moved for summary judgment. A "moving party without the burden of proof at trial need only show that the opponent cannot sustain his burden at trial." *Swansbrough v. Martin*, No. 1:14-CV-1246, 2015 WL 8488814, at *2 (W.D. Mich. Nov. 19, 2015) (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000)). However, "a moving party with the burden of proof faces a 'substantially higher hurdle.'" *Id.* (quoting *Cockrel v. Shelby Cnty. School Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)) (other citation omitted). "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*,

799 F.2d 254, 259 (6th Cir. 1986) (citation omitted).  A moving party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quotation marks and citations omitted).

## III.    ANALYSIS

### A.    Defendants' Motions

The issue in Defendants' motions for summary judgment boils down to whether Plaintiff has sufficient evidence to show who installed the improper sprinkler.  It is undisputed that the sprinkler was not installed until at least 2016 (the year it was manufactured), and that it must have been installed prior to June 29, 2018, when the incident occurred.  Neither Plaintiff nor Defendants have presented any documentation, such as an invoice or receipt, showing who installed the improper sprinkler or when.  Plaintiff's theory of the case, as the Court interprets it, is that the sprinkler could only be installed by someone with specialized training and experience.  If done improperly, an alarm would have gone off or the sprinkler system would have been activated. Plaintiff contends that "[t]here were no alarm activations or dry system sprinkler discharges in 2016 or later up until the date of loss." [Doc. 74 at Page ID # 1198].  Plaintiff does not provide a citation to this fact, and the Court observes that a Century employee was dispatched on April 18, 2018, "due to system tripped." [Doc. 66-3 at Page ID # 607].  Regardless, neither Defendant argues in their filings that the alarm activated or that the sprinkler system discharged at any time between 2016 and June 29, 2018.

Plaintiff further states that Chattanooga Fire was the only "fire protection company" that "had access to the subject property," in 2016 [Doc. 74 at Page ID # 1198], and that Century was the only "fire protection company" with access from May 2017 until June 29, 2018 [Doc. 72 at

Page ID # 1057]. Plaintiff does not provide any citations to the record to support this statement, and the statement does not exclude the possibility of other individuals with the requisite knowledge having access to the hotel and the attic. As Chattanooga Fire points out, the hotel was acquired by new ownership in 2017, at which time the hotel underwent renovations that included the roof, though not the attic itself [Doc. 65-1 at Page ID # 314; Doc. 74-1 at Page ID # 1288].

Chattanooga Fire moves for dismissal of all claims asserted against it (negligent inspection and installation, and breach of warranty of workmanship). It argues:

> Discovery in this cause has been completed. Based on the evidence produced during discovery it is evident that Chattanooga Fire did not install the sprinkler head involved in the incident of June 29, 2018. It is also evident that if Chattanooga Fire did not install the sprinkler head at issue prior to the termination of its relationship with the Hotel at the end of 2016, it could not have been guilty of any negligence in the inspection of that sprinkler head. [Plaintiff] has offered no proof to the contrary.

[Doc. 65 at Page ID # 306].

In support of its motion, Chattanooga Fire cites: (1) the following statement from one of its managers, Roger L. Wolfsperger: "I have examined the work orders, invoices and other business records maintained by Chattanooga Fire in the normal course of business relating to the Hotel. Based on Chattanooga Fire's business records, Chattanooga Fire did not install the sprinkler head that was involved in the incident of June 29, 2018." [Doc. 65-1 at Page ID # 313]; and (2) testimony from Plaintiff's expert, Andrew Caldwell, indicating that he had not seen any documentation or any other evidence showing the improper sprinkler was even manufactured prior to the last date Chattanooga Fire did work at the hotel property, which was in "early December" of 2016 [Doc. 65-2 at Page ID # 323-24].

Chattanooga Fire argues that if there is no proof it installed the improper sprinkler, then Plaintiff's claim for breach of the warranty of workmanship must fail because "there would be no

6

warranty flowing from [Chattanooga Fire] to the Hotel." [Doc. 65 at Page ID # 310]. Chattanooga Fire further argues it "could not have been guilty of negligence in failing to discover the improper sprinkler head if it had not been installed [by] the end of December 2016 when Chattanooga Fire last provided services at the Hotel." [*Id.*].

In response, Plaintiff does not cite any direct evidence Chattanooga Fire installed the improper sprinkler and therefore caused the damage to the hotel. Rather, Plaintiff articulates its theory the Court set forth above based on circumstantial evidence: installation of the sprinkler requires specialized knowledge of a particular process. Failure to follow the process will cause an alarm to activate or cause the sprinkler system to activate, and neither of those events happened between January 1, 2016 until June 29, 2018. Accordingly, the sprinkler must have been installed by a person with specialized knowledge. Chattanooga Fire's employees had the requisite knowledge and had access to the hotel attic in 2016, so its employees could have installed the improper sprinkler. Plaintiff argues the "circumstantial evidence that a Chattanooga [Fire] employee or a Century employee [installed the improper sprinkler] is overwhelming." [Doc. 74 at Page ID # 1198; *see also id.* at Page ID # 1197 ("Based on the evidence, either Chattanooga [Fire] or Century installed the subject sprinkler, and one or both of them failed to discover it during their mandatory annual inspections of the dry pipe sprinkler.")].

Plaintiff further points out that in an answer to an interrogatory, Century wrote, "Century Fire did not begin performing any services at the subject property until on or about May 2017 when it repaired some leaks at the subject property, and the sprinkler head at issue was already installed at the subject property at that time." [Doc. 74-1 at Page ID # 1292-93 (answer to interrogatory #7)]. Plaintiff contends, "[t]his factual assertion alone by co-defendant further demonstrates that this case is not appropriate for summary judgment." [Doc. 74 at Page ID # 1200].

The Court pauses to observe that Century's president Adam Kraskouskas testified, in a Rule 30(b)(6) deposition, that he helped prepare the answer to the interrogatories. Regarding the specific interrogatory above, Kraskouskas testified that the basis for his belief that the sprinkler head was already installed when Century took over fire protection services at the hotel was because Century did not have any documentation indicating that Century had installed the sprinkler head after May 2017 [Doc. 66-3 at Page ID # 435-37].

The basis for Chattanooga Fire's denial of installation-related liability, as stated in Wolfsperger's affidavit, is also based on a lack of documentation in Chattanooga Fire's records:

> I have examined the work orders, invoices and other business records maintained by Chattanooga Fire in the normal course of business relating to the Hotel. Based on Chattanooga Fire's business records, Chattanooga Fire did not install the sprinkler head that was involved in the incident of June 29, 2018.

[Doc. 65-1 at Page ID # 313].

Century only moves for summary judgment on Plaintiff's claims related to installation, not those related to inspection. As mentioned above, Kraskouskas testified that he did not think Century installed the improper sprinkler because Century had no business records reflecting as such. In its motion, Century also cites the deposition testimony of several other Century employees who performed work at the hotel, and each of them denied installing the improper sprinklers. Plaintiff points out that there are other Century employees who were not deposed that performed work at the hotel, including one employee who worked on the "dry system." Nevertheless, discovery is now closed, and Plaintiff has not filed a motion under Federal Rule of Civil Procedure 56(d).

Plaintiff also argues, "in fact there was testimony that former Century employee Allen McFarland (who was not deposed), along with other Century employees, *did enter the attic and*

*performed repair work* on the dry pipe sprinkler system on April 20, 2018 – just two months prior to the loss." [Doc. 72 at Page ID # 1056 (emphasis in original)]. Plaintiff cites Century invoice 313582 [Doc. 72-1 at Page ID # 1161], and deposition testimony from Joey Dupree, a Century employee [*id.* at Page ID # 1139]. The Court observes that the invoice does reflect Allen McFarland and a crew performed three hours of labor at the hotel on April 20, 2018. The invoice does not describe what work McFarland and his crew performed, but it states that Dupree was dispatched on April 18, 2018, "due to system tripped," and that, "4-19-18 crew to troubleshoot and find leaks." [Doc. 72-1 at Page ID # 1161]. It further states:

> Description of Service Performed:
>
> 4-18-18 Left system out of service and advised staff of need for Fire watch.
>
> Service Crew scheduled to be out for repair on 4-18-18 at 2 pm.
>
> Upon arrival system had 3 pin hole leaks on 2' main. Repairs on the main have been [made] system is back in full service all valves are on
>
> Pictures taken
>
> All other systems are in service and alarm panel is normal except for CLOSED CONTROL VALVE TO DRY SYSTEM SUPERVISORY.
>
> Found small leak from plug in air line. Redoped and taped No charge to customer.

[Doc. 72-1 at Page ID # 1163]. The invoice contains photographs, some of which may have been taken in the attic. Dupree was questioned about this invoice during his deposition and he testified that McFarland did "sprinkler service work." [Doc. 72-1 at Page ID # 1139].

The Court must now determine whether Defendants are entitled to judgment as a matter of law, given the above factual background. In a diversity jurisdiction case such as this one, the Court

9

applies the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2012) (citation omitted).

As mentioned, Plaintiff relies on circumstantial evidence to support its claims, which Defendants each claim is insufficient in this case. Under Tennessee law, circumstantial evidence is "evidence of collateral facts and circumstances from which the trier-of-fact may infer that the main fact is based on reason and common experience." *State v. Phillips*, 138 S.W.3d 224, 231 (Tenn. Ct. App. 2003) (citations omitted). "[T]he general rule for all cases of circumstantial evidence—both ordinary cases and res ipsa loquitur cases—is that to make out his case, plaintiff does not have to eliminate all other possible causes or inferences than that of defendant's negligence; but it is enough if the evidence for him makes such negligence more probable than any other cause." *State Farm Mutual Auto. Ins. Co. v. Northgate Parts, Inc.*, No. 1:13-cv-99-WBC, 2015 WL 11017802, at *4 (E.D. Tenn. Mar. 17, 2015) (quoting *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 860 (6th Cir. 2003) (discussing Tennessee law)). However, "[i]t is not enough for a plaintiff to prove that he or she was injured by some unidentified person's negligence. Even though there is beyond all reasonable doubt 'negligence in the air,' the plaintiff must still bring the negligence home to the defendant." *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 524 (Tenn. Ct. App. 2002) (res ipsa loquitor case; further holding the plaintiff "must present evidence that affords a rational basis for concluding that the negligent conduct that caused the injury is probably attributable to the defendant").

Again, Plaintiff's position is that the circumstantial evidence is "overwhelming" that the improper sprinkler was installed by "either a Chattanooga [Fire] employee or a Century employee." [Doc. 74 at Page ID # 1198]. After careful consideration, the Court finds Plaintiff has

not sufficiently "brought the negligence home" to either Defendant, and therefore both Defendants' motions should be granted.

This principal is best reflected in the Restatement (Second) of Torts, § 433B, which explains that typically, "the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff." Restatement (Second) of Torts § 433B (Burden of Proof) (October 2020 update). The Restatement section provides that when there are two or more defendants who have committed tortious conduct, and there is uncertainty as to whose conduct caused harm to the plaintiff, the burden of proof can shift to each defendant to prove they did not cause the harm. The Restatement makes clear that this is only the case, however, when the conduct of *both defendants* is proven by the plaintiff to be tortious. *Id.* (see Comment (g) on Subsection (3): "The rule . . . applies only where it is proved that each of two or more actors has acted tortiously, and that the harm has resulted from the conduct of some of them. On these issues the plaintiff still has the burden of proof."). While this specific provision of the Restatement does not appear to have been expressly adopted by the Tennessee Supreme Court, it is nevertheless consistent with the Tennessee law, which holds that a plaintiff has the burden of proof in establishing each element of a negligence claim, including that *the defendant's conduct* caused the plaintiff's harm. *See Waste Mgmt., Inc. of Tenn. v. South Central Bell Telephone Co.*, 15 S.W.3d 425, 433 (Tenn. Ct. App. 1997) ("[P]laintiffs have the burden of introducing evidence that affords a reasonable basis for concluding that it is more likely than not that the defendant's conduct was a cause in fact of their injury." (citing *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 939 (Tenn. 1994))). *Cf. State Farm*, 2015 WL 11017802, at *5 (circumstantial evidence sufficient to survive summary judgment where defendant denied unlocking motorhome's dipstick that caused

fire, but plaintiff established that defendant was the only servicer of the motorhome before the fire).

Even assuming that one of these two Defendants is responsible for the substandard installation, as the Court does, Plaintiff has offered insufficient proof as to *which* of the two Defendants installed the sprinkler. *See Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 852 (Tenn. 2017) ("A defendant's conduct is a cause in fact of a plaintiff's injury if the injury would not have occurred but for the defendant's conduct. A plaintiff must prove that the negligence of the defendant more likely than not caused the injury."). Plaintiff has not come forward with more than a mere scintilla of evidence that it is more likely than not that Century (instead of Chattanooga Fire) installed the sprinkler that was the cause in fact of Plaintiff's injury, or vice versa. This is fatal to Plaintiff's installation claim because Plaintiff retains the burden of proof to show *which* of the Defendants acted negligently by installing the improper sprinkler. On that question, there is not enough proof in the record for the jury to have a reasonable basis for reaching a decision; rather, the jury would be forced to speculate as to who installed the improper sprinkler.

To review, Chattanooga Fire contends it is entitled to summary judgment because Plaintiff has not produced proof showing Chattanooga Fire installed the improper sprinkler, Chattanooga Fire itself has no record of installing the improper sprinkler, and Plaintiff's expert admitted he had not seen any evidence indicating Chattanooga Fire installed the improper sprinkler. Plaintiff's opposition to summary judgment on the installation claims as to Chattanooga Fire relies on the following: (1) the improper sprinkler was manufactured in 2016 and installed between January 1, 2016, and June 29, 2018; (2) Chattanooga Fire was responsible for fire protection services at the hotel during 2016 and had access to the attic during that time; (3) installing a sprinkler requires specialized knowledge, which Chattanooga Fire employees had; (4) improper installation would

12

have tripped the alarm or caused the sprinklers to discharge, which did not occur between January 1, 2016 and June 29, 2018; and (5) Century's interrogatory response, which provides that the improper sprinkler was already installed by May 2017.[4]

To support its motion for summary judgment on the installation claims, Century argues "there is no evidence" that it installed the improper sprinkler head [Doc. 62 at Page ID # 240]. Century argues that the proof shows that Century did not have any records of installing the improper sprinkler, Kraskouskas had no knowledge of anyone at Century installing the improper sprinkler, and the Century employees who were deposed testified they did not install the improper sprinkler head or supervise any such installation. Plaintiff's opposition to Century relies on the following proof, much of which overlaps with the proof concerning Chattanooga Fire: (1) the improper sprinkler was manufactured in 2016 and installed between January 1, 2016, and June 29, 2018; (2) Century was responsible for fire protection services at the hotel from May 2017 until the subject incident, and had access to the attic during that time; (3) installing a sprinkler requires specialized knowledge, which Century employees had; (4) improper installation would have tripped the alarm or caused the sprinklers to discharge, which did not occur between January 1, 2016 and June 29, 2018; (5) not all Century employees who worked at the hotel were deposed; (6) McFarland, who generally worked on sprinklers but was not deposed, was at the hotel in April 2018, and he may have gone into the attic.

No reasonable juror could conclude, based on the record currently before the Court, that it is more likely that Chattanooga Fire (or Century) installed the improper sprinkler. Both

---

[4] As discussed, this interrogatory response was based on Century's lack of records or other information showing that Century installed the improper sprinkler, rather than on any observation or other affirmative proof the sprinkler was already there. Further, Plaintiff does not address how it relies on Century's interrogatory response to oppose Chattanooga Fire's motion, while still maintaining an installation claim against Century.

13

Defendants deny having any information showing they installed the sprinkler, and the hotel itself has apparently not produced any records or other information showing who installed the sprinkler (or any sprinklers). As mentioned, the interrogatory answer from Century that Plaintiff cites is essentially based on the same lack of documentation and the Court finds it is not adequate proof to submit the question to a jury. The invoice Plaintiff cites does not indicate Dupree, McFarland, or anyone else at Century installed sprinkler heads in April 2018, and neither does Dupree's deposition testimony. Further, the pictures in the invoice, which appear to have been taken by Dupree, do not indicate McFarland was in the attic, and neither does Dupree's deposition testimony.

That is not to say that circumstantial evidence is never sufficient to submit a claim to a jury. *See Gandy v. Captain D's Seafood Restaurant*, Maury Circuit No. 3308, C.A. 89-257-II, 1990 WL 33395, at *3 (Tenn. Ct. App. Mar. 28, 1990) ("The plaintiff was not required to make out a perfect unassailable case in order to get to the jury. She was not bound to exclude every other possible cause for her illness; she had only to produce evidence making it more likely that her illness was caused by unwholesome food served by defendant than by a cause for which defendant would not be responsible." (citation omitted)).

For example, in *State Farm*, this Court found the plaintiff's circumstantial evidence regarding a negligence claim was sufficient to survive summary judgment, but there was only one defendant accused of acting negligently, and that defendant was the only mechanic who had performed work on a motorhome that caught fire. 2015 WL 11017802, at *5 (holding circumstantial evidence against single defendant adequate to survive summary judgment where the plaintiff "presented evidence which, if believed, indicates no-one except Northgate Parts serviced the motorhome in any way in the four days prior to the incident."). Moreover, the

plaintiff's expert in *State Farm* opined that the fire began "in the engine compartment following transmission fluid being expelled through the dipstick onto hot engine components during motorhome operation," thereby implicating the servicer. *Id.* at *2. Similarly, in *Jenkins*, there were two defendants accused of negligence, a general contractor and a subcontractor. The Tennessee Supreme Court found there was a question of fact regarding whether the subcontractor was negligent, where the subcontractor's employees handled flammable substances in the vicinity of where the fire started, smoked cigarettes in the same area, used rags to apply stain to the floors which they "admitted could have started the fire," and they were the last people to leave the house on the day of the fire. 515 S.W.3d at 846. The court nevertheless affirmed the trial court's grant of summary judgment to the subcontractor because the plaintiffs' experts "were not able to identify a possible cause for the fire that was more likely than any other cause." *Id.* at 852. Such cases are clearly distinguishable from the case at bar, where it is clear both Defendants did not install the improper sprinkler, but either Defendant could have done so (unlike in *State Farm* where only one defendant serviced the motorhome), and there is no proof of which of the Defendants acted negligently (unlike in *Jenkins* where there was proof the subcontractors improperly disposed of flammable chemicals and cigarette butts).

In the context of a 42 U.S.C. § 1983 action the Sixth Circuit has held that, "in the face of [a] motion for summary judgment, a . . . plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (citations omitted). The court went on to hold that "a plaintiff does not meet this burden by showing only that a defendant was 'one of' several others who might have committed the unconstitutional act." *Id.* at 492 (citations omitted).

In *Pineda*, the plaintiff was struck in the back of the head by one officer.  He sued three officers, but even after discovery failed to identify the officer that struck him and caused his injuries.  The trial court granted summary judgment to all three officers, and the Sixth Circuit affirmed:

> Pineda could not identify the deputy who allegedly struck him. Although he and other witnesses testified that the attacker was African American, two deputies working that night (Cotton and Berry) are African American, and Pineda has also sued the third deputy (Nobles).  Even under Pineda's version of events, therefore, he "seeks to proceed to trial against at least [two] defendants who are 'free of liability[.]'"  **And Pineda has pointed to no circumstantial evidence suggesting that it was more likely Cotton than Berry who landed the blow (or vice versa).**  With the record in equipoise, Pineda has not presented evidence from which a reasonable jury could conclude that it is "more likely than not" that any specific defendant struck him.

977 F.3d at 492 (emphasis added) (citations omitted).  The court also made clear that its decision was based on general principles of tort law, which are applicable to Plaintiff's negligence claims. *Id.* at 490-91 (noting that "[r]eliance on tort law's causation requirement is particularly appropriate under § 1983).  The Court finds *Pineda* is on point and consistent with Tennessee law; as such, both Defendants are entitled to summary judgment on the negligent installation claims.

Moreover, the Court agrees with Chattanooga Fire that, if Plaintiff cannot show it installed the improper sprinkler, then Plaintiff's claims against Chattanooga Fire related to inspection of the sprinkler system also must fail.  Any inspection by Chattanooga Fire that occurred prior to installation of the improper sprinkler could not have caused Plaintiff's damages.  If Plaintiff does not have sufficient evidence to show the sprinkler was installed by Chattanooga Fire in 2016, then Plaintiff cannot show Chattanooga Fire was negligent in failing to discovery the improper sprinkler, because Chattanooga Fire did not perform inspections after 2016.  If Plaintiff's claims against Chattanooga Fire for negligent installation and inspection are dismissed, then Plaintiff's

16

claim for breach of the warranty of workmanship must also fail, because the alleged breach of warranty of workmanship is the negligent installation and/or inspection.

For these reasons, Chattanooga Fire's motion for summary judgment [Doc. 64] and Century's motion for partial summary judgment [Doc. 61] will be **GRANTED**.

### B.    Plaintiff's Motion

Plaintiff moves for partial summary judgment against Century on Plaintiff's claim relating to Century's allegedly negligent inspection of the sprinklers on May 23, 2017. Plaintiff argues "Century was negligent per se because it violated a provision of the Tennessee Administrative Code and City of Chattanooga Municipal Code by failing to properly inspect sprinklers in the hotel's attic during its annual inspection of the dry sprinkler system." [Doc. 71 at Page ID # 1049]. Plaintiff asks for summary judgment "as to Century's duty and breach of said duty under Plaintiff's negligence claim" related to the inspection [*Id.* at Page ID # 1045]. Plaintiff asserts that National Fire Protection Association Standard 25 ("NFPA 25") has been incorporated into the relevant state and city municipal codes and requires that during an annual inspection, each sprinkler must be individually inspected, with certain exceptions Plaintiff contends are not applicable.

Plaintiff claims that Century employee Adam Nicely, who performed the May 23, 2017 inspection, admitted during his deposition testimony that he believed NFPA 25 only required him to inspect a percentage of the sprinklers in a fire suppression system, and that in fact, he did not inspect every sprinkler even though he could have done so. Plaintiff further claims Nicely testified that he did not go into the attic at all during the May 23, 2017 inspection, despite NFPA 25's requirement that annual inspections occur from "floor level." [Doc. 72-1 at Page ID # 1070]. As such, Plaintiff argues, Nicely could not have inspected the attic sprinklers and Century was negligent per se, as least as to the May 2017 inspection.

17

In response, Century does not challenge Plaintiff's characterization of the requirements of NFPA 25, or Plaintiff's contention that NFPA 25 has been codified in municipal and state law. Century also does not argue that Plaintiff is not entitled to recover under a negligence per se theory.[5] Century only argues that Plaintiff "mischaracterizes the nature of Mr. Nicely's testimony, resulting in a disputed fact that makes partial summary judgment inappropriate . . . ." [Doc. 73 at Page ID # 1185].

Plaintiff and Century cite the following testimony from Nicely, which is difficult to follow at times:

> Q.    Did you inspect the dry system in the attic?
>
> A.    Other than just a floor, I believe, on the trip test on it, I believe, best I can recollect, and we drained the system just on the— drained it on the top floor. But I think just the dry heads, that's kind of that's on the annual inspection is from the floor level, so I think I stayed on that floor. On that top floor.
>
> Q.    Okay. But there are—the dry system is in the attic, you said, correct?
>
> A.    Yes.
>
> Q.    You don't remember going into the attic?
>
> A.    No.
>
> . . . .
>
> Q.    All right. Do you recognize this as the entry way into the attic, the hatch in this photo?

---

[5] In order to recover on a negligence per se theory, a party must establish three elements: "First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. Second, the injured party must be within the class of persons intended to benefit from or be protected by the statute. Finally, the injured party must show that the negligence was the proximate cause of the injury." *Fitzpatrick v. Law Sols. Chicago, LLC*, 584 B.R. 203, 222 (E.D. Tenn. 2018) (quoting *Bennett v. Putnam Cnty.*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000)).

A.     Can't say for sure whether I remember that or not.

Q.     Fair enough. Do you remember going into the attic at this property at any time?

A.     I can't say for sure.

Q.     Can't say "yes" or "no" either way? I'm sorry, I don't think—that didn't come through, your last—

A.     Can't say for sure either way, no, I remember.

. . . .

Q.     And I believe you said you did not go in the attic for this particular inspection?

A.     I don't recall going in, no.

Q.     Don't recall going in. Okay. But you're not sure if you've ever been in the attic at all, period, right?

A.     Not sure, no.

. . . .

Q.     Okay. How do you make the decision on which part you look at and which part you don't?

A.     If you're doing the inspection from floor level, you would—what you can get to, if that makes sense.

. . . .

Q.     And I'm going to represent to you that myself and, I believe, Mr. Kraskouskas and even Mr. Allen there have all walked on the floor in that attic.

A.     Okay.

Q.     So, wouldn't you be required to go up, and that would be floor level, to inspect the sprinkler heads in that attic under NFPA 25?

19

A.      Being it's like the heads on that floor are more than likely run off the dry system too, so that would be included in that percentage that you're required to walk of the building.

Q.      Do you remember specifically for this inspection, . . . Do you remember what percentage of the dry sprinkler heads you inspected as part of your annual inspection?

A.      Not a hundred percent, no.  As much as I could, I'm sure, from floor level.

Q.      Okay.  But you're not sure if you were in the attic or not?

A.      Not a hundred percent sure either way, no, sir.

. . . .

Q.      Is it fair to—fair to say that that's referring to controlling sprinklers, that there's a hundred of them?

A.      That would be an assumption, yes, of what—what it would control, yes.

Q.      Okay.  Did you inspect those hundred sprinklers?

A.      As much as I could that I felt from floor level, yes.

Q.      But you don't have a recollection as you sit here today of where exactly you went?

A.      If, yes, I was in the attic or I—you know, I can't that [sic] long ago when, you know, it's been a day or two.

. . . .

Q.      Okay.  When you mentioned a couple of times your obligations are to inspect what you can see from floor level, from floor level are you talking about, like, being in the hallway of one of the floors of the hotel?  Is that what you mean by "floor level"?

A.      Yes.

Q.      Or on the floor of a – you know, one [of] the rooms?

A.      Yes.

. . . .

Q.      Do you normally inspect attics when you do inspections?

A.      There's different access to an attic, there's different scenarios. Some have steps going up to them. A different access. I mean, ladder access where you could pull a ladder down. Different—if that makes sense to you. Different scenarios to access an attic.

Q.      Sure. So, if you can access an attic with a ladder, you go up into it, generally speaking?

A.      There's times that we do if—if a system's completely in the attic or if some of it's not in the attic, we can get some look at the heads without having to access the attic. There's a lot of different things comes into play on that. I mean, there's temperature, I mean, air quality. There's a lot of different things comes into play when you're doing inspection on the attic, so if you can get a good amount of the heads without accessing the attic then sometime, you know, that—that would go in—all those different scenarios would come into play.

Q.      All right. What about the property we're here for today? Would you have been able to inspect sprinkler heads on the dry system in other parts of the hotel?

A.      I think so. Usually the top floors in motels are dry system. They're usually they're dry heads too. But like, I mean, it's been a year or two, you know, as me remembering the best in the world is, I mean, I can't. You know what I'm saying?

Q.      I understand. So, you don't specifically remember in this hotel visibly inspection [sic]?

A.      Ever seeing, no, sir, I'm not a hundred percent remember being in the attic and I do a lot of inspections at that time for [inaudible]. You know what I'm saying?

Q.      And were you—sorry. Go ahead.

A.      Lot of this, lot of the building, you know, we're still on, I done a lot of inspections for them. Looked at a lot of different things.

[Doc. 66-4 at Page ID # 657-58; 669; 671; 672; 673; 675; 677; 678-79].

It appears to be undisputed—at least for purposes of summary judgment—that failing to inspect the attic sprinkler at issue was a violation of NFPA 25. Century has not contested that such a violation could support a finding that it is negligent per se. Nevertheless, only a failure to inspect the attic sprinkler at issue could possibly have caused Plaintiff's alleged damages in this case, and the Court agrees with Century that Nicely's testimony is not "so powerful" that a reasonable juror could not find Nicely did in fact go into the attic and inspect the sprinklers there. Accordingly, Plaintiff's motion for partial summary judgment [Doc. 66] will be **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, Century's motion for partial summary judgment [Doc. 61] is **GRANTED**, and all claims related to the installation of the improper sprinkler are hereby **DISMISSED**. All claims against Century related to *inspection* of the sprinkler system remain pending.

Chattanooga Fire's motion for summary judgment [Doc. 64] is **GRANTED** and all claims against Chattanooga Fire are hereby **DISMISSED**.

Plaintiff's motion for partial summary judgment [Doc. 66] is **DENIED**.

The trial of this case will proceed between Plaintiff and Century as scheduled on June 8, 2021.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE